## D. P. TARPEY, RESPONDENT, *v.* DESERET SALT COMPANY, APPELLANT.

TARPEY *v.* DESERET SALT Co. ante p. 205.

PUBLIC LANDS.--CONGRESSIONAL GRANT.—Congress by the act of July 1, 1862, granting certain lands to the Central Pacific Railroad Company of California, granted the perfect legal title *in praesenti*, to all the lands included in the grant, whether surveyed and selected or not, provided the lands did not come within the exceptions.

CORPORATIONS. -GRANT FROM ONE TO ANOTHER.--The articles of amalgamation and consolidation incorporating the consolidated company, contained a grant as follows: The said Central Pacific Railroad Company "hereby sells, assigns, transfers, grants, bargains, releases and conveys" to the said consolidated company "all its property, real, personal and mixed" and "all rights, privileges and franchises," etc., *held*, that the articles conveyed the lands granted to the former company by the government under the act of July 1, 1862.

ID. -PROOF OF EXISTENCE.—Where title is traced through corporations, which are not parties to the record and with which defendant has no privity, proof of their existence as corporations *de facto* by their articles of incorporation duly made, is sufficient *prima facie*.

ID.—PROOF OF POWER TO HOLD REAL ESTATE. --In case above, it is not necessary to prove by the laws of the state where organized that said corporations were authorized to hold or transfer real estate, such power is determined by the laws of the government in which they are doing business.

APPEAL from a judgment of the district court of the first district, and from an order refusing a new trial.

Action in ejectment. Plaintiff showed following title:

1st. The land in controversy is an odd-numbered fractional section lying within the limits of the grant made by

Congress to the "Central Pacific Railroad Company of California."

2d.   The map of definite location of the line of said railroad was filed, as required by acts of Congress, on the 20th day of October, 1868.

3d.   The amalgamation and consolidation of the said "Central Pacific Railroad Company of California" and the "Western Pacific Railroad Company," by articles of association bearing date June 22d, 1870, the new or consolidated company being designated the "Central Pacific Railroad Company."

4th.   The amalgamation of the "Central Pacific Railroad Company," the "California & Oregon Railroad Company," the "San Francisco, Oakland & Alameda Railroad Company" and the "San Joaquin Valley Railroad Company," by articles of agreement dated August 20th, 1870. This consolidated company was also called the "Central Pacific Railroad Company."

5th.   A selection made by the "Central Pacific Railroad Company" for patent of a portion of the land in controversy, viz., the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, the N. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ and N. W. $\frac{1}{4}$ of said section, and filed in the land office at Salt Lake City in 1885.   The land so selected for patent being all the surveyed land in said section, and the only lands therein as to which the costs. of survey, selecting and conveying had been paid.

6th.   A lease, dated August 7th, 1885, from the "Central Pacific Railroad Company" to the plaintiff, demising the said lands to him for the term of five years, from the 1st day of January, 1886.

*Mr. P. L. Williams*, for appellant.

The grant to the railroad did not convey the legal title: Act of July 1, 1862, secs. 3 and 4, 12, Stat., 489; Act of July 2, 1864, sec. 21, 13 Stat., 356; *Railway Co.* v. *Prescott*, 16 Wall., 603; *Railway Co.* v. *McShane*, 22 Wall., 444; *North Pac. R. R. Co.* v. *Traill County*, 115 U. S., 600.

In this case the plaintiff, to recover, traces his title through supposed corporations, the legal organization or

existence of which is nowhere shown. Is there any rule of law that excuses a plaintiff from making such proof? If these corporations, or any of them, did not in fact exist there is a complete break in the plaintiff's chain of title.

*Mr. Charles S. Varian*, for respondent.

The grants vested in the Central Pacific Railroad Company of California, its "associates, successors and assigns," (section 15, act 1862), the full beneficial interest including right of entry and possession. The right to retain the patents, the evidence of the title, until the costs of survey were paid, was in the nature of a lien, which the government reserved.

It was not available to any other person than the Government. The purpose of these grants was to give substantial and beneficial aid to the companies. Their right to dispose of the lands is expressly recognized in the acts of Congress, and their mortgage of them has been held to be a disposition: Act of Congress, approved July 1st, 1862, secs. 3, 4, 5, 6, 9, 10, 11. Statutes at large, Vol. 11, p. 489; act of Congress, approved July 2d, 1864, secs. 3, 4, 5, 8, 9, 11, 14. Statutes at large, Vol. 13, p. 356; *C. P. R. R. Co.* v. *Dyer*, 1 Sawyer, 641; *Ryan* v. *C. P. R. R. Co*, 5 Sawyer, 265; *S. P. R. R. Co.* v. *Orton*, 6 Sawyer, 184–195; *Swann & Billups* v. *Lindsey*, (Ala.) Am. and Eng. R. R. cases, Vol. 14, p. 565; *Railroad Co.* v. *Smith*, 9 Wall., 95; *Schulenberg* v. *Harriman*, 21 Wall., 44; *Leavenworth R. R. Co.* v. *U. S.*, 92 U. S., 741; *Missouri Ry. Co.* v. *Kansas Pacific Co.*, 97 U. S., 492; *Platt* v. *Union Pacific Ry. Co.*, 99 U. S., 48; *Ryan* v. *C. P. R. R.*, 99 U. S., 385; *Van Wyck* v. *Knevals*, 106 U. S., 364; *Grinnel* v. *R. R. Co.*, 103 U. S., 739; *Kansas Pacific Co.* v. *Dunmeyer*, 113 U. S., 629; *Walden* v. *Knevals*, 114 U. S., 373; *Buttz* v. *Northern Pacific R. R. Co.*, 119 U. S., 55; *Northern Pacific R. R. Co.* v. *Majors* (Montana) Pacific Reporter, Vol. 2, 322; *Doran* v *C. P. R. R. Co.*, 24 Cal., 256; *N. P. R. R. Co.* v. *Lilly*, (Mont.) Pacific Reporter, Vol. 9, 116; *Wright* v. *Roseberry*, 121 U. S., 488; *Denny* v. *Dobson*, Nov. 28, 1887, Fed. Rep., Vol. 32, No. 14 p. 899. By Field, Circuit Justice.

The court has decided that these lands may not be taxed by the local sovereignties, but this on the ground that the lien of the United States for the costs of survey might thereby be destroyed: *R. R. Co.* v. *Prescott*, 16 Wall., 603; *R. R. Co.* v. *McShane*, 22 Wall., 462; *N. P. R. R. Co.* v. *Traill County*, 115 U. S., 600.

The lessor of plaintiff has been repeatedly recognized by the Congress of the United States, by the decisions of the supreme court, by the interior department.

HENDERSON, J.:

This is an action of ejectment for lands described in the complaint as "the north-west quarter of fractional section 9, in township 11 north, of range No. 9 west, Salt Lake base and meridian, and the N. E. quarter and the S. W. quarter of said section, in part covered with water; in all, 380 acres, more or less." The lands border on Great Salt Lake, and at the time of commencing the action were in the possession of defendant, and were used by it in its process of manufacturing salt by solar evaporation. The plaintiff proved his title to the lands by showing (1) that the land is an odd-numbered section, lying within the limits of the grant made by Congress to the Central Pacific Railroad Company of California by the act of July 1, 1862, (12 St., 489,) and the various acts amendatory thereof. (2) That the lands were not such as were included in the reservations and exceptions contained in the act; that they were not mineral, had not been pre-empted, or otherwise disposed of, etc. (3) That the map of definite location of the line of said railroad company was filed, as required by the act of Congress, on the 20th day of October, 1868. (4) The amalgamation and consolidation of the said Central Pacific Railroad Company of California and the Western Pacific Railroad Company, by articles of association and incorporation, bearing date June 22, 1870, the new or consolidated company being the Central Pacific Railroad Company. (5) The amalgamation of the Central Pacific Railroad Company, the California & Oregon Railroad Company, the San Francisco, Oakland & Alameda Railroad

Company, and the San Joaquin Valley. Railroad Company, by articles of association and incorporation, dated August 20, 1870. This consolidated company was also called the "Central Pacific Railroad Company." (6) A selection by the Central Pacific Railroad Company for patent of a portion of the lands, viz., the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, the N. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, and the N. W. $\frac{1}{4}$ of said section, and filed in the land office at Salt Lake City in 1885, they being the only lands in said section as to which the costs of surveying and conveying had been paid. (7) That the Central Pacific Railroad Company mortgaged the lands in controversy October 1, 1870. (8) A lease dated August 7, 1885, from the Central Pacific Railroad Company to the plaintiff, demising the lands to him for the term of five years from January 1, 1886. The question presented by the record is whether this showing proves title *prima facie* in the plaintiff upon which he might recover; the claim made against it by the appellant being (1) that the acts of Congress above referred to do not convey the legal title *in praesenti* to the railroad company; that in view of the provisions of the act for subsequent patents, and for the payment of costs and expenses of survey and patent, the grant is in the nature of a promise to grant in the future; and that until the subsequent grant is made by patent, after payment of fees and expenses, it is but an equity, and is not such a legal title as is required to be shown in ejectment. (2) That the lands were not conveyed by the Central Pacific Railroad Company of California to the first amalgamated company, or by the first amalgamated company to the second; that the form and language of the articles of association put in evidence are insufficient for that purpose. (3) That no conveyances of the premises were proved from the Central Pacific Railroad Company of California to the amalgamated companies, and by the one to the other, and thence to the plaintiff, for the reason that the laws of the state of California were not shown or proved under which the amalgamated companies, and the constituent companies composing them, were organized, showing their legal right to organize, or hold and convey property. The

record is made so as to present these questions, and we will notice them in the order above stated.

As to the first, the question as to whether the acts of Congress are to be construed as granting a legal title *in praesenti* has been much discussed by the courts. The question has been presented in various ways and forms under acts, so far as this question is concerned, precisely like the acts in question. In the following cases: *Schulenberg* v. *Harriman*, 21 Wall., 44; *Railroad Co.* v. *U. S.*, 92 U. S., 733; *Railway Co.* v. *Railway Co.*, 97 U. S., 491; *Railroad Co.* v. *Baldwin*, 103 U. S., 426; *Grinnell* v. *Railroad Co.*, Id., 739; *Wright* v. *Roseberry*, 121 U. S., 488; *Rutherford* v. *Green's Heirs*, 2 Wheat., 196— the supreme court of the United States have held that the title granted was a perfect legal title *in praesenti*, as distinguished from an equitable or inchoate interest arising upon a contract or promise of the government. The appellant relies upon *Railway Co.* v. *Prescott*, 16 Wall., 603; *Railway Co.* v. *McShane*, 22 Wall., 444; *Railroad Co.* v. *Traill Co.*, 115 U. S., 600. The latter case is in seeming conflict with the cases first cited. In an opinion recently rendered by Judge Field, sitting in the district court, (*Denny* v. *Dodson*, 32 Fed. Rep., 899,) in holding that the grant under an act like the one in question granted the legal title *in praesenti*, and having his attention called to *Railroad Co.* v. *Traill Co.*, *supra*, and its apparent conflict with the cases first cited, reasons that the conflict is only seeming, and not real, by showing that the question in the latter case presented for judgment was different, and only presented a question between the government and its grantee. We deem it unnecessary to cite the statute at length, or enter into any extended review of the subject. In the cases cited the whole subject is fully and elaborately discussed. The language of that act is "that there be, and hereby is, granted." We think it is now beyond controversy that, when the question is presented as it is here, where no right of the government reserved in the act making the grant is involved, it grants the legal title *in praesenti* to all the lands included in the grant, whether surveyed and selected or not.

The second point involves the construction of the language of the articles of amalgamation and incorporation. Do they contain apt and necessary words for the conveyance of the property in question? In each of the articles —in the first in article 7, and in the second in article 1— is found substantially the following provisions: "And the said several parties, each for itself, hereby sells, assigns, transfers, grants, bargains, releases and conveys to the said new and consolidated company and corporation, its successors and assigns, forever, all its property, real, personal, and mixed, of every kind and description; all its capital stock; all its interest in the shares of its capital stock subscribed, but not fully paid for; all credits, effects, judgments, decrees, contracts, agreements, claims, dues, and demands of every kind and description; and all rights, privileges, and franchises, corporate and otherwise, held, owned, or claimed by said parties of the first and second parts, or either of them, in possession or expectancy, either at law or in equity; subject, however, to all conditions, obligations, stipulations, contracts, agreements, liens, mortgages, incumbrances, claims, and charges thereon, or in anywise affecting the same." We cannot conceive of language more apt to effectuate the transfer, and we think it sufficient in form for that purpose. The claim that the property was not conveyed, because it was not shown to be property required for the purposes for which the corporation was organized, is, we think, as will presently be seen, immaterial; but, if it was, the acts granting the land declared the purposes for which it was granted, and provided the uses to which it should be put, which are declared to be the corporate purposes and objects of the grantee: *Burke* v. *Smith,* 16 Wall., 395.

There was no proof of the laws of the state of California under which the various corporations claimed to be organized, and this gives rise to the third and last question. It will be observed that the plaintiff traces his title by mesne conveyances through the corporations. They are not parties to the record. Their existence and powers are not directly in issue, and the defendant is in no way in privity with them. Under such circumstances,

the only proof of corporate existence that is required is proof of the corporation *de facto;* and this was abundantly proved by the articles of incorporation. They were under the seals of the companies, respectively, and were duly signed, acknowledged, and proved: 2 Mor. Priv. Corp. 746, 750, 776-778. But it is said that there was no proof of the corporate existence *de facto* as to some of the constituent companies that entered into, and in part formed, the amalgamated companies. We are not prepared to say that the execution of the articles by them under their seals is not *prima facie* evidence of their existence *de facto;* but the fallacy of this claim will be seen by tracing this title in detail. The government conveyed this land to the Central Pacific Railroad Company of California. This conclusively proves the incorporation of this company, not only *de facto,* but *de jure.* The grant of real estate by the government to an association of individuals by any name denoting it as other than a natural person, thereby clothes it with corporate capacity to take, hold, and convey the same. Bing. Real Prop. 854. This company amalgamated with the "Western Pacific Railroad Company," and together they formed the Central Pacific Railroad Company, and the title was passed to the new company. Suppose, according to the contention of the appellant, that there is no proof of the existence of the Western Pacific Railroad Company, and that it is to be presumed that it did not exist, then the new company would be but a reincorporation of the Central Pacific Railroad Company of California, and would be its successor, with the title of the property transferred to it. The new incorporation thus formed again joined with various other companies in forming still another company. If it is to be presumed that the companies joining with it did not exist, then it is again but another reincorporation, with the title again transferred to the new company, and this company conveyed to the plaintiff. In other words, all the companies through which this title passed were shown to exist *de facto,* by articles of incorporation. The existence of these companies, their amalgamation and consolidation, is specially recognized by the act of Congress of May

7, 1878 (20 St., 56), and thereby, also, their existence is established *de facto.* But it is said that, without proof of the laws of California, there was no proof that the corporations were authorized by law to hold real estate at all, or to transfer it, or that it was within the purposes and objects for which they were incorporated. This it is not necessary to show. Transfers of property to, and transfers by, corporations that have no such right or authority by law, are not void; they are only voidable, at the instance of the government, in a direct proceeding for that purpose. 2 Mor. Priv. Corp. 648-653, inclusive, 709-711, 746; 1 Devl. Deeds, sec. 121; *Telegraph Co.* v. *Telegraph Co.*, 22 Cal., 398; *Water Co.* v. *Clarkin*, 14 Cal., 544; *Bank* v. *Matthews*, 98 U. S., 628; *Leazure* v. *Hillegas*, 7 Serg. & R., 313; *Banks* v. *Poiliaux*, 15 Amer. Dec. 706; *Oil Co.* v. *Railroad Co.*, 32 Fed. Rep. 22. As to whether transfers to and by corporations that are expressly prohibited therefrom by positive legislative enactments are absolutely void as between third parties, the authorities differ, but the burden of showing that there is such prohibition is upon the party attacking the transfer: *Burrill* v. *Bank*, 35 Amer. Dec. 395. The question of authority on the part of the corporations was purely a collateral one in this case. The defendant was in no situation to attack their passed and fully-executed contracts; at least, without showing that they were wholly and absolutely void: Devl. Deeds; *Water Co.* v. *Clarkin; Banks* v. *Poiliaux, supra.* The rules are the same as to foreign corporations. The power and the right of a foreign corporation to hold and convey property is not to be determined under the laws of the home government under which they are organized, but it is to be determined by the laws of the government in which they are doing business, and in which they acquire the property: *Runyan* v. *Coster's Lessees*, 14 Pet., 122; *Bank* v. *North*, 4 Johns. Ch., 370; *Lumbard* v. *Aldrich*, 28 Amer. Dec., 381. This must be true, as the result of the rule that it is a question only between the corporation and the government. If lands acquired by a foreign corporation are liable thereby to be forfeited to the government under which it is organized, a foreign government

might, in this indirect way, acquire lands within the domain and jurisdiction of other governments, which might not be permitted. By the general comity which exists throughout the United States and territories, in the absence of positive prohibitions, corporations created in one state or territory are permitted to carry on any lawful business in any other state or territory, and to acquire, hold, and transfer property there, equally as individuals. If the policy of a state or territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way by the state or territory where the property is acquired: *Cowell* v. *Springs Co.*, 100 U. S., 55. The deeds or transfers of these corporations, under their seals, properly affixed, and duly executed and proved, produced by the party claiming under them, is sufficient *prima facie* proof of title. *Burrill* v. *Bank, supra.* In *Water Co.* v. *Clarkin, supra,* the supreme court of California say: "It would lead to infinite inconveniences and embarassments if, in suits by corporations to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity." In that case the corporation was a party. Here, where the transaction is fully passed and executed, the reasoning applies with greater force. If the title to every piece of land which happened to be traced to and from a corporation was made to depend upon whether the corporation was duly and legally organized, strictly according to the laws of the government under which it claims existence, and as to whether the taking, holding and conveying of the property was strictly within their corporate powers, and for their corporate purposes, it would tend to lessen the value of corporate franchises, and to impair the marketable value of lands thus situated by reason of the difficulties in determining the title.

Our attention is not directed to any error in the record, and the judgment should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.