THE CORINNE MILL CANAL AND STOCK COM-
PANY, APPELLANT, *v.* WILLIAM JOHNSON,
RESPONDENT.

EJECTMENT.—RAILROAD GRANT.—EXCEPTIONS.—Under the grant of
lands to the Central Pacific Railway Company, granting every
alternate section of the public land designated by odd numbers
to the amount of ten alternate sections, on each side of the
railroad on the line thereof within twenty miles on each side
of said road, not sold, reserved, or otherwise disposed of by
the United States, and to which a pre-emption or homestead
claim may not have attached at the time the line of said railroad
is definitely fixed; *provided* that all mineral lands shall be
excepted from this grant, the plaintiff claiming as grantee of
the railroad company must prove that the land admitted to
be in an odd numbered section within twenty miles of the
railroad as definitely located, is not within any of the excep-
tions to the grant.

APPEAL from a judgment upon verdict of the district
court of the first district and from an order refusing a
new trial. The opinion states the facts except the follow-
ing which appear in the record. There was evidence
tending to show that there were no mineral lands in the
land in controversy, and no evidence to the contrary so
far as the record discloses, and the plaintiff offered in
evidence as admissions of the defendant the defendant's
sworn cross complaint, alleging title in the railroad com-
pany, and a recognition of that title by the defendant.
It was admitted on the trial that all the lands were at
the time they were withdrawn from sale unsurveyed.

*Messrs. Bennett, Marshall, and Bradley,* for the
appellant.

It is well settled that the grant to the railroad company was *in præsenti,* citing a large number of cases. The grant became fixed at the time the road was definitely located. *Ryan* v. *Railroad Co.,* 5 Sawyer 263. The record shows that the premises in question were by the Interior Department withdrawn from entry, October 16, 1873, because within the twenty mile limit. Such withdrawal is evidence that the definite location had preceded it. *Weaver* v. *Fairchild,* 50 Cal. 360; *Newhall* v. *Sanger,* 92 U. S. 762; *Moffatt* v. *United States,* 112 U. S. 30. The lands being unsurveyed at the time of withdrawal, no pre-emption or homestead right could have attached. *Buxton* v. *Traver,* 130 U. S. 235; *Frisbie* v. *Whitney,* 9 Wall. 187; *Yosemite Case,* 15 Wall. 77. Mere entry on and possession of land by one intending to make an entry when the lands are surveyed does not withdraw the land so possessed from the grant. *Railroad Co.* v. *Mecklin,* 23 Kan. 167; *Weaver* v. *Fairchild,* 50 Cal. 360. The proof was that the land was not settled or inhabited, but one person succeeded another. The lands were not mineral. The position of the trial court was that the fact that the land was not in the exception could not be proven by parol. This was a mistake. *Railroad Co.* v. *Smith,* 9 Wall. 97; *Wright* v. *Roseberry,* 121 U. S. 496; *State* v. *Railroad Co.,* 40 A. and E. R'y Cases, 468. The court therefore erred in taking the question of title away from the jury. The remaining conditions of the grant were subsequent and could only be taken advantage of by the grantor. *Grinnell* v. *Railroad Co.,* 103 U. S. 739; *Schulenberg* v. *Harriman,* 21 Wall. 63; *Railway Co.* v. *Majors,* 5 Mont. 111.

*Mr. Thomas Maloney,* for the respondent.

ANDERSON, J.:

This is an action by the plaintiff to recover possession of the following described real estate situated in Box Elder county, to-wit: Section 5, township 11, N., of range 3 W.; sections 17, 19, 21, and 29, in township 12 N., of range 3 W.; the W. $\frac{1}{2}$ of section 33, and the S. W. $\frac{1}{4}$ of section 15, in township 12 N., of range 3 W., Salt Lake meridian. The complaint alleges that plaintiff was, on the 8th day of June, 1883, the owner, and in possession, and entitled to the possession of said real estate, and that on said day the defendant unlawfully and wrongfully took possession of the whole thereof, and has ever since unlawfully withheld the possession of the same from the plaintiff. The plaintiff alleges that it has been damaged by the withholding of the possession of said real estate by defendant in the sum of $5,000, and that the value of the rents and profits thereof is $1,000. The plaintiff prays judgment for the possession of the land in question, for $5,000 damages, and for $1,000 for rents and profits. The defendant, by his answer, denied all of the allegations of the plaintiff's complaint, except that of possession by defendant of the premises in controversy, and pleaded that he and those under whom he claimed had held adverse possession of the land for more than fifteen years next preceding the commencement of the action. As a further answer, and by way of cross-complaint, the defendant alleged that in April, 1878, one E. A. Stahn went upon the premises in controversy, and made valuable improvements thereon, under a contract with the Central Pacific Railroad Company for the purchase thereof, and that Stahn afterwards sold his improvements to the defendant, and that plaintiff obtained its title from said railroad company, with notice of and subject to defendant's right, and prayed for a specific performance of this contract against plaintiff, or that he have

judgment for the value of his improvements. The cross-complaint was afterwards, and before trial, dismissed by defendant, and no evidence was offered in its support. The cause was tried before a jury, and there was a verdict and judgment for defendant, and the plaintiff brings this appeal.

The plaintiff's proof of title consisted of an article of agreement between it and the Central Pacific Railroad Company, dated June 6, 1883, whereby the railroad company agreed to sell and convey to plaintiff the lands in controversy, together with a large amount of other lands, upon certain terms as to price, time of payment, etc.; and upon compliance by plaintiff with the terms of the sale the railroad company was to convey all the lands described in the agreement, to which it had acquired or might acquire title from the United States. The contract by its terms provided that plaintiff should have possession and right of possession of the lands agreed to be sold. The plaintiff also showed the organization of the Central Pacific Railroad Company of California, and its consolidation with the Western Pacific Railroad Company on the 22d day of June, 1870, under the name of the Central Pacific Railroad Company; also the amalgamation or consolidation of the Central Pacific Railroad Company with the California & Oregon Railroad Company, the San Francisco, Oakland & Alameda Company, and the San Joaquin Valley Railroad Company, on the 20th day of August, 1870. Plaintiff also offered in evidence an order from the commissioner of the general land-office dated October 16, 1873, together with a map of the line of the Central Pacific Railroad Company, as definitely located, withdrawing the lands in controversy from entry, the same being within the twenty-mile limit of the Central Pacific Railroad Company.

The lands in controversy are odd-numbered sections

and parts of odd-numbered sections, and it was not dis-
puted at the trial in the court below, nor was it in the
argument in this court, that the land lies within the
twenty-mile limit of the line of the Central Pacific Rail-
road as it was constructed and is now operated. It was
not shown by the plaintiff that any patent for these
lands had ever been issued by the United States to the
Central Pacific Railroad Company nor to the plaintiff.
It was not shown that the lands were not such as were
included in the reservations and exceptions contained in
the act of congress of July 1, 1862, and the various acts
amendatory thereof, granting each odd-numbered section
within twenty miles of the line of said road, as definitely
located, to the Central Pacific Railroad Company, nor
was it shown when the map showing the definite location
of said railroad was filed in the office of the secretary of
the interior, nor when the railroad was completed. The
court instructed the jury that "the plaintiff has under-
taken to show here that it has derived title from the
government to the land, but as a matter of law, gentle-
men, I charge you that the plaintiff has failed in that.
The proof which he has submitted here of the ownership,
of these lands on the part of the Central Pacific Rail-
road Company by grants of congress is defective,—so
defective that it does not show title whatever. The acts
of congress that have been put in here were taken from
the consideration of the jury, it being my opinion that
certain requisites have not been shown,—certain things
have not been shown as complying with that statute in
order to perfect the title under the grants of congress.
What they are, it is unnecessary for me here to state."
This instruction was excepted to, and constitutes the
principal assignment of error, as it substantially took the
case away from the jury, and virtually instructed them
to return a verdict for the defendant.

The evidence shows the defendant was in the peaceable possession of the lands in controversy at and before the commencement of this action, and hence, unless the plaintiff could show that it owned the premises, the defendant had the right, as against the plaintiff, to remain in possession. The plaintiff claimed to derive its title through the Central Pacific Railroad Company by its contract of purchase with said company. Without stopping to inquire whether this action, which is substantially the same as ejectment at common law, could be maintained upon a contract of purchase where the legal title had not yet vested in the plaintiff, we proceed to inquire whether the party from which it had a contract of purchase had title to the lands in controversy, for the plaintiff could have no greater or better title than the party from which it claimed to have purchased. The evidence failed to show a patent from the government to any one. The plaintiff relied upon the act of congress of July 1, 1862 (12 U. S. St. at Large, p. 489), and the act of July 2, 1864 (13 U. S. St. at Large, p. 356), amendatory thereof, to establish the grant of these lands to the Central Pacific Railroad Company of California, and through the several consolidations of that company with other companies to the Central Pacific Railroad Company, through and under which it claimed title. If all the odd-numbered sections within twenty miles of the line of the Central Pacific Railroad as constructed and operated had been granted to it by the acts of congress referred to, it would have included the lands in controversy, and the evidence would have been sufficient upon proving the railroad company had complied with the requirements of the statute. But by the terms of the act of July 1, 1862, certain portions of such sections were excepted and reserved from the operation of the grant.

Section 3 of the first-mentioned act contains the following language, to-wit: "That there be and is hereby granted to the said company   *   *   *   every alternate section of public land designated by odd numbers to the amount of five alternate sections per mile [changed to ten by section 4, Act 1864] on each side of said railroad on the line thereof, and within ten [change to twenty, section 4, Act 1864] miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said railroad is definitely fixed: *provided,* that all mineral lands shall be excepted from the operation of this act.   *   *   * And all such lands so granted by this section which shall not be sold or disposed of by said company, within three years after the entire road shall have been completed shall be subject to settlement and pre-emption, like other land, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company." The act further provided that the railroad company should within two years after the passage of the act designate the route of its road as near as may be, and file a map of the same with the department of the interior. It will thus be seen that congress did not grant the whole of each odd-numbered section within the prescribed limits, but only such odd-numbered sections or parts of sections as were not mineral, and as had not been sold, reserved, or otherwise disposed of, or were not within any government reservation, or to which a pre-emption or homestead claim had not attached. Now, it is obvious that if the lands in dispute were included in any of the exceptions or reservations mentioned in these statutes, they did not pass by the grant, and never became the property of the railroad company nor of plaintiff.

In the case of *McGrath* v. *Tallent, ante,* 26 Pac. Rep.

574, this Court held that in an action of ejectment by one holding by deed from the Union Pacific 'Railroad Company of lands granted to it by the act of congress referred to, and where no patent had been issued, that it was necessary for the plaintiff to prove a compliance with the statute by the railroad company, and that the lands in dispute were not included in any of the reservations or exceptions mentioned in the statutes, in order to maintain the action. See, also, *Tarpey* v. *Salt Co.*, 5 Utah, 494, 17 Pac. Rep. 631. In this case, no evidence having been offered that the railroad ever obtained a patent for the lands in dispute, nor that it filed its map showing its line as definitely located within the time provided by the law, nor any proof as to the time when said railroad was completed, nor that the lands were not within any of the exceptions or reservations provided in the statute, we think plaintiff failed to show its title, and that there was no error in the instruction given by the. court to the jury.

The trial court submitted to the jury the issue of the statute of limitations raised in defendant's answer, and this is assigned as error, upon the ground that there was no evidence tending to support this issue. We have examined the evidence contained in the record, and, while it does not purport to contain all the evidence in the case, yet from the evidence set out in the printed transcript we think no error was committed in this respect, and the judgment of the district court is affirmed.

ZANE, C. J., BLACKBURN, J., and MINER, J., concurred.